Peter KAPLAN and Helen Kaplan, Plaintiffs,

v.

William S. REED, Cynthia L. Reed, James Reed, Philip Hopkins, Timothy S. Howell, and Teresa F. Koehn a/k/a Teresa Roberts, Defendants.

No. CIV.A. 97–S–857.

United States District Court, D. Colorado.

Oct. 21, 1998.

ORDER

SPARR, District Judge.

This case is before the Court on the Recommendation of United States Magistrate Judge Patricia A. Coan, dated July 23, 1998. The Recommendation was also served by mail on July 23, 1998. Plaintiffs filed specific written objections to the Recommendation on

August 3, 1998, as prescribed by 28 U.S.C. § 636(b)(1). Defendants James Reed and Cynthia L. Reed filed a joint response to Plaintiffs' Objection on August 17, 1998. The Court must make a *de novo* determination of those portions of the proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1).

Plaintiffs' Second Amended Complaint was filed April 3, 1998. It contains claims pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 et seq., as well as common law claims for fraudulent conveyance and civil conspiracy. The Recommendation deals with James Reed's Motion to Dismiss Second Amended Complaint, filed April 13, 1998, Cynthia Reed's Motion to Dismiss Second Amended Complaint, filed April 15, 1998, and Teresa Robert's Motion to Dismiss Second Amended Complaint, filed May 26, 1998.

The Recommendation advises that the motions to dismiss the RICO claims for improper venue be denied. No objection was filed to that recommendation. It is further recommended that the motions to dismiss which argue failure to state a claim be granted. In particular, it is recommended that Cynthia Reed's motion to dismiss be granted on the first claim for relief because Plaintiffs have failed to allege the commission of two predicate acts as required by 18 U.S.C. § 1962(c). It is also recommended that all three motions to dismiss be granted on the second claim because Plaintiffs have failed to state a RICO conspiracy claim. The reasoning for this is that they have failed to failed to plead the necessary underlying substantive RICO violation required for such a conspiracy claim. The Recommendation also suggests that the Court decline to exercise supplemental jurisdiction over Plaintiffs' three state law claims.

 As a preliminary matter, the Court notes that Plaintiffs' Objection contains some discussion of evidence gained through discovery which they attempted to rely on at a hearing on the motions to dismiss held before the Magistrate Judge. Plaintiffs state that they were allowed to argue some of those facts as to Defendant Teresa Roberts at the hearing but were not allowed to cite any facts gained from discovery as to Defendants James Reed or Cynthia Reed. At the time of the hearing, the only motions to dismiss pending had been filed by James Reed and Cynthia Reed.

In fact, the written order dated April 6, 1998 which detailed the rulings made at the April 3rd hearing, states that Plaintiff's motion to supplement their responses to James Reed's and Cynthia Reed's motions to dismiss, which was the written request to include the materials gained during discovery, was denied. Since at that point only the two motions were pending, it seems unlikely that any permission would have been granted to use evidence gained during discovery as to Teresa Roberts, who was not yet a party.

It was not until later that month, after the Bankruptcy Court gave permission for Teresa Roberts to be added as a party in this case, that Roberts filed a motion to dismiss. While that motion was not pending during the hearing, it is pending now. Whether or not Plaintiffs were allowed to use the evidence gained during discovery at the hearing on the motions to dismiss, the Court finds consideration of such evidence inappropriate. Evidence gained during discovery cannot be considered when examining the sufficiency of Plaintiff's Second Amended Complaint. A motion to dismiss for failure to state a claim upon which relief may be granted shall be decided on the sufficiency of the four corners of the complaint alone. Fed.R.Civ.P. 12(b).

Plaintiffs argue that Defendants' motions to dismiss should have been treated as motions for summary judgment. They acknowledge that Rule 12(b) provides that if matters outside the pleadings are presented **and are not excluded by the court,** the motion shall be treated as one under Rule 56. As noted above, Plaintiffs' discovery materials were excluded in an April 6th order of the Magistrate Judge which stated, "The remainder of Plaintiffs' motion to supplement Plaintiffs' responses to Defendants Cynthia Reed's and James Reed's Motion to Dismiss is denied, as the Court will not permit Plaintiffs to convert Defendants' motions to dismiss into Rule 56 motions by considering matters outside the pleadings." Despite Plaintiffs' argument that some of the information was not excluded by the court, the written order indicates

otherwise and there is no indication, beyond Plaintiffs' statement, that such evidence was considered.

Plaintiffs had 10 days to appeal the April 3rd order and failed to do so. Fed.R.Civ.P. 72(a). The ruling on that matter also determined the issue of whether the motions would be considered under Rule 12 or Rule 56. "[A] party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." *Id.* Consequently, Plaintiff's arguments regarding the exclusion of the matters outside the pleadings will not be considered and those matters will likewise be barred from consideration by the Court.

*First Claim for Relief*

■ Plaintiffs have two major objections to the Recommendation. The first relates to the recommendation that the first claim for relief against Cynthia Reed be dismissed because Plaintiffs have failed to plead two predicate acts as necessary under 18 U.S.C. § 1962(c). The Magistrate Judge found that only one predicate act was pled. Plaintiffs argue that they set forth two additional sets of allegations that would meet the requirement for a second predicate act.

In particular, Plaintiffs argue that the Magistrate Judge ignored evidence that would establish a second predicate act with regard to Script Review, Inc. which parallels the first predicate act found with regard to Legal Forms and Services, Inc. They state that they alleged that "Cynthia Reed had done virtually the same procedure with regard to Script Review, Inc. as she did with Legal Forms and Services, Inc." (Objections at p. 13). Consequently, they argue that if their allegations were sufficient with regard to the one company, they should also be sufficient with regard to the second company.

Plaintiffs' argument would have merit if indeed their allegations regarding the two companies were that similar. A review of the Second Amended Complaint shows that they are not. The pertinent allegations regarding Legal Forms and Services, Inc. under the first claim for relief are contained in paragraphs 93, 94, 106, 156 and 160–64. They include such allegations as that Cynthia Reed is the listed owner, sole officer and registered agent for Legal Forms and Services, Inc. and that she was involved in the placement of corporate documents in the U.S. mail which misrepresented her own and William Reed's interest in that company.

The Court attempted to locate all allegations regarding Script Review Inc. in the approximately 70 paragraphs that make up the first claim for relief. Neither Plaintiffs' objection, with one exception, nor their response to Cynthia Reed's motion cites any specific paragraphs in the Second Amended Complaint regarding the formation or ownership of Script Review Inc. Paragraph 127 states that William Reed and Cynthia Reed "participated in the incorporation, management, and operation of the affairs of Script through a pattern racketeering activity by committing numerous violations of mail fraud and wire fraud for the purpose of hindering, delaying and defrauding their creditors, including the Kaplans." That extremely conclusory allegation is of no use in determining whether Plaintiffs have sufficiently pled the required predicate acts. See, *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir.1994) (conclusory allegations are insufficient to support a claim for relief.)

A further examination of the Second Amended Complaint to discover additional allegations regarding Script Review, Inc. disclosed the following assertions: Defendant Hopkins incorporated Script Review Inc. Second Amended Complaint at ¶ 47. Defendant Roberts was the registered agent for Script Review Inc. Second Amended Complaint at ¶ 48. There is also an allegation that William Reed and Cynthia Reed caused a bank account for Script Review, Inc. to be opened on which they were the signors. Second Amended Complaint at ¶ 128.

These allegations fall far short of those relating to Legal Forms and Services, Inc. There is no allegation that Cynthia Reed was the owner, sole officer or registered agent for Script Review, Inc. In fact, the cited paragraphs negate some of those possibilities as regards Script Review, Inc. There is also no allegation regarding Cynthia Reed's placement in the U.S. mail of corporate documents which misrepresented her own and William

Reed's interest in that company. As previously mentioned, the conclusory allegation in ¶ 127 is insufficient in that regard. Consequently, Plaintiffs' allegations regarding Script Review, Inc. are not adequate to state a violation of the mail fraud statute and therefore do not state a second predicate act as required under § 1962(c).

■ Plaintiffs have also objected that they stated a second predicate act in regard to the transfer of the property at 1713 Glenview Drive. They argue that the Magistrate Judge did not refer to the facts they pled regarding the filing of the Quit Claim Deeds and the Homestead Exemption within 60 days of the domestication of an out-of-state judgment in Nevada.

The conclusion on this issue in the Recommendation is "These allegations, as stated, do not allege an act by Cynthia Reed in furtherance of a scheme to defraud William Reed's creditors." Recommendation at p. 18. The timing discussion raised by Plaintiffs does not change the conclusion stated by the Magistrate Judge.

*Second Claim for Relief*

■ Plaintiffs' second objection relates to the second claim for relief. The Magistrate Judge found that because Plaintiffs had failed to state a claim under the first claim for relief, they had also failed to state a claim for a RICO conspiracy under § 1962(d). Plaintiffs argue that *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) has repudiated this requirement.

In that case, Salinas was acquitted of a § 1962(c) violation but convicted of a § 1962(d) violation. The Supreme Court held that a conviction for a § 1962(d) violation did not require a § 1962(c) conviction. Instead, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]" *Salinas*, 118 S.Ct. at 477. The 'intention to further the endeavor' was differentiated from actual completion of the act of furthering the endeavor or even agreeing to commit the offense.

The situation in *Salinas* was quite different from the situation here where the issue is the sufficiency of the pleadings. There is nothing in *Salinas* which deals with the issue of pleading or negates the language of *Schroder v. Volcker*, 864 F.2d 97 (10th Cir.1988). "Our conclusion that plaintiffs have failed to allege any substantive violation of RICO disposes of their claim under subsection (d), because the object of a RICO conspiracy must be to violate a substantive RICO provision." 864 F.2d at 98 (citation omitted). Consequently, the Court rejects Plaintiffs' argument that an allegation of a substantive violation of § 1962(c) is not necessary. The Court agrees with the Recommendation that since no substantive violation of § 1962(c) has been pled regarding Cynthia Reed, the allegations regarding a violation of § 1962(c) by William Reed must be considered.

■ Plaintiffs' objection regarding the allegation concerning William Reed has to do with the continuity requirement for finding a pattern of racketeering activity under § 1962. The Magistrate Judge found that, in regard to the requirement that a pattern of racketeering activity must be adequately pled, Plaintiffs had satisfied the relationship test but had failed to allege facts to satisfy the continuity requirement. The reasoning behind that finding was that the scheme as alleged by Plaintiffs had the single goal of hindering, delaying or defrauding William Reed's creditors. In addition, the creditors were a finite group. No potential had been shown to extend that group to other persons or entities.

■ Plaintiffs argue that they have met the continuity requirement. First they challenge the finding that their allegations show a closed-ended series of predicate acts. They argue that the fact that the only entity left is Legal Forms and Services Inc., is not an indication that the threat of repetition into the future has dissipated. They argue that the organizational pattern and system of authority with that company is the same as with William Reed's former law firm so that is an indication that the pattern of conduct will continue.

The Recommendation deals with the argument that the affairs of Legal Forms and Services, Inc. pose a threat of continuing

legal activity. It says that, to the extent that Plaintiffs would make that argument, they "have not alleged particular facts to show that William Reed is conducting the affairs of Legal Forms [and Services, Inc.] through the commission of related predicate acts that have injured the Plaintiffs." Recommendation at fn.7.

Plaintiffs have responded to this footnote by citing paragraphs 160 to 164 of the Second Amended Complaint. The Court agrees that those paragraphs do not alleged sufficient facts to show that company is being used to commit predicate acts which have injured the Plaintiffs. In fact, paragraph 164, which comes the closest to making such allegations contains many of the same conclusory allegations contained in paragraph 127 about the Script Review, Inc. It states that the company was managed, operated and conducted by William Reed and Cynthia Reed "through a pattern racketeering activity by committing numerous violations of mail fraud and wire fraud for the purpose of hindering, delaying and defrauding their creditors, including the Kaplans." Again, these allegations are insufficient to support this claim for relief.

Plaintiffs go on to argue that even if the series of predicate acts is found to be closed-ended instead of open-ended, they have still met the continuity requirement. They argue that in finding that they had shown only a single scheme with a discrete goal directed at a finite group of people, the Magistrate Judge relied on two cases which can be easily distinguished. Those cases are *SIL–FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507 (10th Cir.1990) and *Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545 (10th Cir.1992). It is Plaintiffs' position that both of these cases contained a single discrete goal which is very different than situation alleged in the Second Amended Complaint.

Plaintiffs continue at this point with citations to their supplemental response brief to the motions to dismiss which cites discovery depositions. As previously noted, these materials will not be considered. The argument continues with the contention that there was no single discrete goal but a "scheme with a broad purpose containing numerous goals all

to hinder, delay and defraud William Reed's creditors." Objection at 22. Plaintiffs further contend that they have met the requirements for continuity under *Resolution Trust Corp. v. Stone,* 998 F.2d 1534 (10th Cir.1993).

The Court disagrees with Plaintiffs' analysis. Despite Plaintiffs' best effort to characterize it otherwise, it is clear that the scheme alleged had the single discrete goal of hindering William Reed's creditors. It is also clear that that scheme was directed toward those creditors and there is no indication that it had any potential to extend beyond that group. "Multiple on-going activities are more likely to satisfy the continuity requirement than would be several sporadic, albeit still related, acts." *Resolution Trust,* 998 F.2d at 1543. The factors cited for that discussion of extensiveness further reinforce this conclusion: number of victims, number of racketeering acts, variety of racketeering acts, whether the injuries caused were distinct and the complexity and size of the scheme. *Id.* (citations omitted). What Plaintiffs have pled is acts by William Reed for the purpose of defrauding those who were his creditors. This is insufficient to plead a violation of § 1962(c).

Consequently, since Plaintiffs have failed to plead a violation for § 1962(c) for either William Reed or for Cynthia Reed, Plaintiffs' second claim for relief must also fail pursuant to *Schroder v. Volcker,* 864 F.2d 97 (10th Cir.1988). This is also true as to Defendant Howell for the same reasons even though he has not filed a motion. Since a determination has been made that the second claim has not been properly pled as to the Defendants who filed motions, and that claim, against all Defendants, depends on the allegations against William Reed and Cynthia Reed, as previously discussed, the motion has not been properly pled as to all Defendants. This reasoning also applies to Defendant Williams Reed although, as the Court noted in its June 11, 1998, Order, he has not been served with the Second Amended Complaint. Consequently, the first claim must also be dismissed as to William Reed and the second claim must be dismissed as to all Defendants.

The Recommendation also recommends that the Court decline to exercise jurisdiction

over Plaintiffs' state law claims since the claims over which the Court has original jurisdiction are being dismissed. Plaintiffs' have not responded to this recommendation.

Jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. § 1367 which is a codification of the doctrine of supplemental jurisdiction. Supplemental jurisdiction is a statutory invention which supplanted the notions of pendent and ancillary jurisdiction, and was codified as part of the Judicial Improvements Act of 1990. Section 1367 gives jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). That statute also states that "[a] district court may decline to exercise supplemental jurisdiction over a claim in subsection (a) if the district court has dismissed all claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3). Under the circumstances, the Court finds that is appropriate in this case.

The Court also notes that near the conclusion of their Objection, Plaintiffs argue that if the motions to dismiss are not treated as a motion for summary judgment, they should be allowed to amend their complaint to include the information discovered. Permission to amend should be granted "when justice so requires." Fed.R.Civ.P. 15(a). A decision on a request to amend is within the discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The complaint that has been discussed here is Plaintiffs' Second Amended Complaint. It is therefore Plaintiffs' third complaint, which was responded to by a third round of motions to dismiss by Defendants. The Court finds that justice does not require Plaintiffs to be allowed four 'bites at the apple.' Consequently, no further amendment will be allowed.

1. Because plaintiffs' second amended complaint contains 292 paragraphs of allegations, the court sets forth only those factual allegations relevant to the motions to dismiss filed by Cynthia Reed, James Reed and Teresa Koehn.

The Court now being sufficiently advised,

It is therefore ORDERED that:

1. The Recommendation of United States Magistrate Judge is Accepted.

2. James Reed's Motion to Dismiss Second Amended Complaint is Granted.

3. Cynthia Reed's Motion to Dismiss Second Amended Complaint is Granted.

4. Teresa Robert's Motion to Dismiss Second Amended Complaint is Granted.

5. Plaintiffs' first and second claims are dismissed with prejudice.

6. Plaintiffs' third, fourth and fifth claims are dismissed without prejudice.

Each party shall pay his or her own costs and attorney fees.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

This matter is before the court on James Reed's Motion to Dismiss Second Amended Complaint [filed April 13, 1998]; Cynthia Reed's Motion to Dismiss Second Amended Complaint [filed April 15, 1998]; and Teresa Roberts' Motion to Dismiss Second Amended Complaint [filed May 26, 1998]. An Order of Reference under 28 U.S.C. § 636(b) and Fed. R.Civ.P. 72(a) and (b) referred the motions to the undersigned magistrate judge for recommendation on April 28, 1998. The motions are fully briefed. The court has determined that oral argument would not materially assist its determination.

### I. Background

The following relevant factual allegations are contained in plaintiffs' Second Amended Complaint.[1] Plaintiffs are judgment creditors of defendant William Reed. ¶ 12. Plaintiffs obtained a default judgment against William Reed in Denver District Court on March 1, 1993 in the total amount of $345,-863.84.[2] ¶ 63. Plaintiffs assert that all defen-

2. The judgment was obtained in a Denver District Court action filed in March 1989, Case No. 89CV4610, wherein the plaintiffs and William and Cynthia Reed were named defendants and the plaintiffs had filed cross claims against Wil-

dants have conspired with William Reed to transfer and conceal his assets in an effort to delay, hinder or defraud William Reed's creditors, including the plaintiffs, and that the conspiracy has rendered plaintiffs' judgment against William Reed uncollectible. ¶ 111.

Plaintiffs allege that at all times relevant William Reed was an attorney licensed to practice law in Colorado and had an ownership interest in, and participated in the operation and management of, the law firms of William S. Reed, P.C., Reed and Hopkins, P.C., and W. Reed and Associates, P.C. ¶¶ 25, 113, 142, 193, 219. In 1990, William Reed stopped practicing law in Colorado and moved first to California and then to Nevada. ¶¶ 3, 37.

Defendant Cynthia Reed is William Reed's wife and defendant James Reed is William Reed's father. ¶¶ 17–18. Defendant Hopkins was the president and a shareholder of Reed and Hopkins, P.C., which operated from 1989 to 1994. ¶¶ 13, 68. Defendant Howell was the president and sole shareholder of W. Reed and Associates, P.C., which operated from 1994 to 1996. ¶¶ 14, 68–69. Defendant Koehn was the office manager of William S. Reed, P.C. and the officer manager and a director of Reed and Hopkins, P.C. and W. Reed and Associates, P.C. ¶¶ 15, 34, 200–201.

Defendant Hopkins incorporated Script Review, Inc. ("Script"), a Colorado corporation, in August 1991. ¶¶ 47, 125. Script's affairs were managed, operated, and controlled by William and Cynthia Reed. ¶ 126. Script's registered address was that of Reed and Hopkins, P.C. and defendant Koehn was its registered agent. ¶ 48. A Script checking account was opened at the Washington Trust Bank in Spokane, Washington on November 1, 1991 which listed William and Cynthia Reed as the authorized signatories on the account. ¶¶ 49, 128. At William Reed's direction, monies were diverted from Reed and Hopkins, P.C. and W. Reed and Associates, P.C. and were deposited into the Script account at Washington Trust Bank from 1991

to December 1994. ¶¶ 51, 54, 56, 66, 71, 79, 129, 143. Between January 1992 and March 1993, numerous deposits from various other sources were also made to the Script account. ¶¶ 53–56. William Reed directed the diversions through the use of interstate wires and the monies were transmitted through the U.S. mail. ¶ 130. William and Cynthia Reed used monies deposited into the Script account to pay their personal expenses. ¶¶ 57, 67, 72, 138, 144. James Reed also drew checks on the Script account. ¶ 59.

On or about May 28, 1992, defendant Koehn, then an office manager and officer of Reed and Hopkins, P.C., wrote a letter to the Denver District Court regarding one of the lawsuits then pending against William Reed, stating that William Reed did not work or conduct any business through Reed and Hopkins, P.C., nor did he share an address with that law firm. ¶ 60.

Between March 31, 1993 and September 9, 1994, three wire transfers, totaling $150,000, were deposited into the Script account at Washington Trust Bank from two banks in New York. ¶¶ 74, 134. The transfers were made under the corporate name of Diamond Productions, Inc. *Id.* William Reed is the president of Diamond Productions, Inc. ¶¶ 74, 136. On May 29, 1992, checks drawn on the Script account were used to purchase a fifty percent interest in real property in Montana under the name Diamond Productions, Inc. and to pay expenses related to the ownership and potential development of that property. ¶¶ 75, 76, 139. The one-half ownership interest in the property held by Diamond Productions, Inc. was transferred to an individual on April 26, 1996, approximately one month after one of William Reed's judgment creditors domesticated its judgment in the state of Montana. ¶¶ 77, 140.

Between June 4, 1993 and February 10, 1994, twelve checks totaling $87,296 were drawn on the Script account and made payable to Country Club Hills, Christopher Homes, and Christopher Homes Design Center, and were used in part to purchase real

---

liam Reed. Second Amended Complaint, ¶ 30. The plaintiffs in the Denver District Court action, referred to by plaintiffs as the "Washington state partnerships" also obtained a judgment against

William Reed in that action, and in another action they had filed against William Reed, in the total amount of approximately $1.1 million. ¶¶ 30, 64.

property at 1713 Glenview Drive, Las Vegas, Nevada. ¶ 78. The checks identify James Reed as the maker or contain his name in the lower right portion of the check. ¶ 78. James Reed purchased the 1713 Glenview Drive property on September 8, 1994 and signed a promissory note in the principal amount of $441, 850 on September 15, 1994. ¶¶ 80, 83. The deed to the property contained the notations: "Mail tax statements to: Reed, James c/o William Reed—631 N. Stephanie St.,# 215 Henderson, NV 89014." ¶ 86. That address is a mail drop address which has been provided periodically as an address for Script and for William Reed. *Id.*

In connection with the financing James Reed obtained for the purchase of the property, James Reed executed and mailed an Owner Occupancy Rider wherein he promised and assured the mortgage company that he would occupy 1713 Glenview Drive as his primary residence; however, William and Cynthia Reed, rather than James Reed, used the property as their primary residence. ¶¶ 84, 85, 87, 153–154. James Reed again represented that 1713 Glenview Drive was his primary residence in the Loan Modification Agreement which he signed in October 1994 and deposited in the mail to the mortgage company. ¶¶ 88, 155. On November 13, 1995, James Reed executed a deed of trust securing 1713 Glenview Drive for the benefit of Barbara Von Gartzen in the amount of $150,000. ¶¶ 95, 156. The "trustee" listed on the deed of trust is Toni Powers, an employee or agent of Legal Forms and Services, Inc., the corporation whose sole shareholder is listed as Cynthia Reed. *Id.*

James Reed transferred all ownership rights in the property located at 1713 Glenview Drive to Cynthia Reed on April 10, 1996 by execution of a quitclaim deed which was deposited in the U.S. mail. ¶¶ 98, 157. Cynthia Reed executed a Declaration of Homestead on April 16, 1996 wherein she claimed a homestead exemption for 1713 Glenview Drive. ¶¶ 99, 159. William Reed quitclaimed his homestead or community interest in the property to Cynthia Reed that same day. ¶¶ 100, 158.

Koehn was deposed by counsel of one of William Reed's judgment creditors for the purpose of discovering the assets of William Reed on January 10, 1995. ¶ 91. During the deposition Koehn testified that William Reed's compensation from the law firm was $1,000 a month in salary, health insurance and leases for two vehicles paid by the firm. *Id.* Koehn was deposed by plaintiffs' counsel on April 8, 1996 for the purpose of obtaining information about the assets of William Reed. ¶ 96. During that deposition, Koehn affirmed her previous deposition testimony regarding William Reed's annual compensation from the law firm. *Id.*

Plaintiffs allege that William and/or Cynthia Reed caused the incorporation of Legal Forms and Services, Inc., a Nevada corporation doing business as Legal Forms +, on October 17, 1995. ¶ 93. Cynthia Reed is the sole officer, registered agent and only listed shareholder of Legal Forms and Services, Inc. ¶¶ 93, 160. William Reed conducts significant business activities through Legal Forms and Services, Inc. ¶¶ 94, 160, 162. On or about February 14, 1997, plaintiffs learned that a representative of Legal Forms and Services, Inc. told one individual that the company could attempt to hide an individual's assets upon request by forming a corporation for that individual without using the individual's name or address. ¶ 106.

Plaintiffs allege that William Reed used the interstate telephone lines to direct defendant Koehn to divert monies from the law firm of Reed and Hopkins, P.C., and later from W. Reed and Associates, P.C., to various bank accounts in various states for the benefit of William and Cynthia Reed. ¶ 118–124, 145–46, 191–192, 205–206. The banks where the accounts were located included the Valley Bank of Nevada, the Bank of America Nevada, the West One Bank of Boise, Idaho, and two bank accounts at Washington Trust Bank. ¶¶ 118, 145. All bank account deposits were transmitted through the U.S. mail. ¶¶ 120, 122, 124, 146.

Plaintiffs domesticated their Denver District Court judgment against William Reed in Nevada on or about December 9, 1996 and made two failed attempts to serve William Reed at 1713 Glenview Drive with a Notice of Filing Judgment and Affidavit, pursuant to

the Uniform Enforcement of Foreign Judgments Act. ¶ 105.

Plaintiffs filed their Second Amended Complaint on April 3, 1998 asserting a claim against Cynthia Reed for violation of 18 U.S.C. § 1962(c), and asserting that defendants Cynthia Reed, James Reed and Teresa Koehn participated in a RICO conspiracy under 18 U.S.C. § 1962(d). Plaintiffs also assert common law claims against Cynthia Reed and James Reed for fraudulent conveyance with regard to the transactions relating to the property at 1713 Glenview Drive and against all defendants for civil conspiracy.

Defendant Koehn filed for protection under Chapter 7 of the United States Bankruptcy Code in the United States District Court, District of Colorado, on January 10, 1997. Plaintiffs filed a Motion for Relief from Stay and Abstention on October 9, 1997 so that they could join defendant Koehn as a party defendant in the instant action. On April 29, 1998, the United States Bankruptcy Court granted plaintiffs' request to proceed against Koehn as a defendant in the instant action for purposes of determining liability only. *See* April 29, 1998 Order Granting Motion for Expansion of Order Granting Relief from Stay.

## II. Standard of Review

Teresa Koehn, Cynthia Reed and James Reed move to dismiss the second amended complaint under Fed.R.Civ.P. 12(b)(3) and 12(b)(6).[3]

The court's review of a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction. *See M.K.C. Equipment Co. v. MAIL Code, Inc.,* 843 F.Supp. 679, 682 (D.Kan.1994); *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.,* 78 F.R.D. 445, 452 (D.Del.1978). Where, as here, the motion to dismiss for improper venue is based on the allegations of plaintiffs' second amended complaint and written affidavits, the plaintiffs need only make a prima facie showing that venue is proper. *See Taylor v. Phelan,* 912 F.2d 429,

431 (10th Cir.1990)(deciding motion to dismiss for lack of personal jurisdiction).

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the court must accept as true all well-pleaded factual allegations and construe those allegations in a light most favorable to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is appropriate only if "it appears beyond a doubt that the [pleader] can prove no set of facts in support of [its] claim which would entitle [it] him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see, also, Pitts v. Turner and Boisseau, Chartered,* 850 F.2d 650, 652 (10th Cir. 1988).

Teresa Koehn also moves to dismiss for failure to effect valid service of process of the second amended complaint. However, the court will determine whether plaintiffs have stated a claim against Teresa Koehn before reaching her defective service argument.

## III. Legal Analysis

### A. RICO Claims

#### 1. Venue

■ Defendants Cynthia and James Reed move to dismiss the instant action for improper venue. Plaintiffs' second amended complaint alleges that venue is proper in this court under 28 U.S.C. § 1391(b) of the general federal venue statute because a substantial number of the events giving rise to plaintiffs' claims occurred in Colorado and defendants Hopkins, Howell and Koehn are believed to be domiciled in Colorado. ¶ 11. Plaintiffs allege that venue is also proper as to defendants Cynthia Reed and James Reed under 18 U.S.C. § 1965(b) because plaintiffs have alleged a multi-district conspiracy involving those defendants and the ends of justice are served by litigating plaintiffs' claims against all defendants in one trial. *Id.*

The RICO statute contains its own venue provisions, at 18 U.S.C. § 1965(a) and (b),

---

**3.** Defendants also move to dismiss for plaintiffs' failure to satisfy the pleading requirements for fraud under Fed.R.Civ.P. 9(b). A motion to dismiss for failure to allege fraud with particularity is treated as a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *See Brooks v. Bank of Boulder,* 891 F.Supp. 1469, 1476 (D.Colo.1995)(*Brooks I* ).

which are supplemental to those contained in 28 U.S.C. § 1391. *See Anchor Glass Container Corp. v. Stand Energy Corp.,* 711 F.Supp. 325, 327, n. 7 (S.D.Miss.1989)(internal citations omitted); *Michelson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 1279, 1286 (S.D.N.Y.1989)(internal citations omitted); *see, also, Monument Builders of Greater Kan. City, Inc. v. American Cemetery Ass'n of Kansas,* 891 F.2d 1473, 1477 (10th Cir.1989)(recognizing that special venue statutes are supplemented by the 28 U.S.C. § 1391 venue provisions applicable to all civil cases).

 Section 1965(a) provides the venue is proper in any district in which a defendant "resides, is found, has an agent, or transacts his affairs." Section 1965(b) provides for the exercise of venue over multiple defendants in a RICO case, some of whom would not otherwise be subject to the venue in that district:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Generally, § 1965(b) is implicated in a multidefendant RICO action where venue is proper as to at least one RICO defendant, but not others, under 28 U.S.C. § 1391 or 18 U.S.C. § 1965(a).[4] *See Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1055–56, n. 10 (S.D.N.Y.1987); *BankAtlantic v. Coast to Coast Contractors, Inc.,* 947 F.Supp. 480, 485 (S.D.Fla.1996)(citing *Bridge v. Invest America, Inc.,* 748 F.Supp. 948, 951 (D.R.I.1990)); *Southmark Prime Plus, L.P. v. Falzone,* 768 F.Supp. 487, 491 (D.Del. 1991).

The court must first determine whether venue in Colorado is proper as to all defendants under 28 U.S.C. § 1391(b) or 18 U.S.C. § 1965(a). The court finds that plaintiffs have not made a prima facie showing that venue in Colorado is proper as to defendants Cynthia Reed and James Reed under 28 U.S.C. § 1391(b). Venue is not proper under 28 U.S.C. § 1391(b)(1) or (b)(2) because all of the defendants do not reside in Colorado, and, although it appears from the allegations of plaintiffs' second amended complaint that a substantial number of the events giving rise to plaintiffs' claims occurred in Colorado, the specific acts alleged against James Reed and Cynthia Reed did not. Further, as set forth below, it is not clear from the record whether, under subsection (b)(3), there is no other district in which this purported RICO action could otherwise have been brought.

The parties agree that venue in Colorado is not proper as to defendants James Reed and Cynthia Reed under 18 U.S.C. § 1965(a).

Plaintiffs have made a prima facie showing that venue in Colorado is proper as to defendants Hopkins, Howell, and Koehn under 18 U.S.C. § 1965(a), as those defendants are alleged to reside in Colorado. Venue in Colorado is also proper as to William Reed under 28 U.S.C. § 1391(b)(2) because a substantial number of the alleged acts upon which plaintiffs' RICO claims are based were committed by William Reed in Colorado. Accordingly, because venue in Colorado is proper as to all of the defendants except James Reed and Cynthia Reed, the court must decide whether, under 18 U.S.C. § 1965(b), the ends of justice require those defendants to defend against plaintiffs' RICO claims in the District of Colorado.

Defendants argue that venue is improper in Colorado under § 1965(b) because another district, the District of Nevada, would have personal jurisdiction over all the defendants; therefore, the ends of justice do not require that defendants be brought before this court. Defendants further contend that plaintiffs have failed to allege that defendants James Reed and Cynthia Reed participated in a single, nationwide conspiracy so as to justify requiring them to defend against an action venued in Colorado.

Defendants rely principally on the Ninth Circuit Court of Appeals' decision in *Butcher's Union Local No. 498 v. SDC Investment,*

---

4. Section 1965(b) authorizes nationwide service of process, thereby conferring personal jurisdiction over defendants who would otherwise be outside a court's jurisdictional reach.

*Inc.,* 788 F.2d 535, 539 (1986), in support of their argument that venue is not proper in Colorado. In that case, the court did not address the venue issue, but rather decided whether a district court in California could exercise personal jurisdiction over Colorado resident defendants in a RICO case. The *Butcher's Union* court, in construing 18 U.S.C. § 1965(b), found that Congress intended to provide for nationwide service of process in RICO cases to enable a plaintiff to bring all members of a nationwide RICO conspiracy before a court in a single trial. *Id.* at 539. However, the court noted that a RICO plaintiff did not have an unlimited right to nationwide service of process:

> For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. This standard does not create jurisdictional gaps because it does not prevent plaintiffs from pursuing separate suits against nonresident RICO defendants who did not participate in the single racketeering enterprise.

*Butcher's Union,* 788 F.2d at 539. The court then found that plaintiffs had failed to allege a multi district conspiracy that involved the Colorado-resident defendants; therefore, plaintiffs were not entitled to nationwide service of process under the "ends of justice" provision of § 1965(b).

There is a divergence among the courts as to the intended operation of § 1965(b). Some district courts have held that the special venue provisions of § 1965(b) are not implicated unless venue is proper in one district with respect to at least one of the defendants and no other district would have venue over all of the defendants. *See Bridge v. Invest America, Inc.,* 748 F.Supp. 948, 953 (D.R.I.1990); *Abeloff v. Barth,* 119 F.R.D. 315, 329 (D.Mass.1988).

 Other courts have held that a court may determine whether the "ends of justice" require that all defendants in a RICO action be brought before a single forum regardless of whether venue over all defendants is prop-

er in another forum. Those courts reason that the availability of an alternative forum is but one factor, albeit an important one, to be considered in determining whether the ends of justice require all defendants to be present for trial in the forum in which the action was commenced. *See American Trade Partners, L.P. v. A-1 Int'l Importing Enterprises., Ltd.,* 755 F.Supp. 1292, 1304–1305, and n. 20 (E.D.Pa.1990); *Miller Brewing Co. v. Landau,* 616 F.Supp. 1285, 1290 (D.Wis.1985); *Monarch Normandy Square Partners v. Normandy Square Assoc. Ltd Partnership,* 817 F.Supp. 899, 905 (D.Kan.1993); *Anchor Glass Container Corp.,* 711 F.Supp. at 331; *Southmark Prime Plus, L.P.,* 768 F.Supp. at 491. Other factors considered in determining whether dismissal for improper venue is appropriate include the amount of time already spent by the litigants pursuing their claims in a plaintiff's chosen forum, the age of the case and the court's familiarity with the issues, whether dismissal or transfer of the case would result in extraordinary delay to the plaintiff, and whether defendants have retained competent local counsel. *See Monarch Normandy Square, Partners,* 817 F.Supp. at 905; *Miller Brewing Co.,* 616 F.Supp. at 1290–91; *American Trade Partners, L.P.,* 755 F.Supp. at 1305.

It is impossible to determine at this stage of the proceedings whether, as defendants allege, the district of Nevada is a proper venue as to all the defendants. The allegations of plaintiffs' second amended complaint would indicate that venue in Nevada is not proper as to defendants Howell and Koehn, and defendants have not provided any evidence to the contrary.

The court finds, therefore, that plaintiffs' RICO claims against all defendants are properly venued in Colorado under 18 U.S.C. § 1965(b). The ends of justice require that James Reed and Cynthia Reed defend against the RICO claims in Colorado so that plaintiffs have a single forum in which to proceed against all of the alleged members of a multi-district RICO conspiracy. The court is also cognizant that discovery has been substantially completed in the District of Colorado and further delay of this case would unfairly prejudice the plaintiffs. According-

ly, the court recommends that defendants' motions to dismiss the RICO claims against them for improper venue be denied.

## 2. *Alleged RICO violations*

Plaintiffs assert that defendant Cynthia Reed has violated 18 U.S.C. § 1962(c) and (d) and that defendants James Reed and Teresa Koehn have violated 18 U.S.C. § 1962(d). Defendants move to dismiss plaintiffs' RICO claims against them under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

As an initial matter, the court must determine whether plaintiffs have standing to bring a claim under § 1962(c). 18 U.S.C. § 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of section 1962." A RICO plaintiff has standing to bring a claim under § 1962(c) only to the extent that he has been injured in his business or property by the conduct which constitutes the violation of that section. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

A cause of action under RICO is not ripe for adjudication until damages become clear and definite. *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir.1994); *DeMauro v. DeMauro,* 115 F.3d 94, 97–98 (1st Cir.1997); *Barnett v. Stern,* 909 F.2d 973, 977 n. 4 (7th Cir.1990). Thus, a defendant's alleged actions in fraudulently transferring and concealing his assets does not result in an injury to a plaintiff's property until such time as the plaintiff has an actual judgment in hand. Prior to obtaining a judgment, a plaintiff's claimed injury is based only on a "hypothetical inability to recover." *Lincoln House, Inc. v. Dupre,* 903 F.2d 845, 847 (1st Cir.1990).

Further, a judgment creditor who claims that his judgment is uncollectible because of the defendant's conduct may not pursue the RICO treble damages remedy unless he is first able to show that his right to execute on his judgment has been successfully frustrated. *See First Nationwide Bank,* 27 F.3d at 768 (plaintiff who claims that a debt is uncollectible because of defendant's conduct must show that contractual

right to payment has been frustrated); *Burke v. Dowling,* 944 F.Supp. 1036, 1050 (E.D.N.Y.1995)(RICO claim by creditors of Ponzi scheme promoters not ripe where creditors had failed to demand payment or seek to obtain and enforce a judgment).

Here, plaintiffs allege that the default judgment for $345,863 which they obtained against William Reed in Denver District Court on March 1, 1993, has been rendered uncollectible by William and Cynthia Reed's violation of § 1962(c). Plaintiffs allege that since the filing of multiple lawsuits against defendant William Reed in 1989, he has engaged in efforts to transfer and conceal all of his assets, which efforts continue to this date. Plaintiffs allege that in December 1996 they domesticated their judgment against William Reed in Nevada, his last known state of residence, and caused a Notice (and later an Amended Notice) of Filing Judgment and Affidavit pursuant to the Uniform Enforcement of Foreign Judgments Act to be issued. Second Amended Complaint, ¶ 105. Plaintiffs attempted to serve the Notice to William Reed at his last known address, but were informed that he no longer resided there. *Id.* Plaintiffs thereafter attempted to ascertain William Reed's assets; they attempted to serve William Reed with a deposition subpoena issued by the Clark County District Court, Nevada, but the process server was unable to locate William Reed at his normal place of business at Legal Forms +, at his last known address, or at an address which William Reed had previously provided to the Colorado Supreme Court grievance committee. ¶ 107.

The court finds that plaintiffs have sufficiently alleged that their right to collect upon their default judgment has been successfully frustrated by William Reed's efforts to render himself judgment proof. Accordingly, plaintiffs have alleged an injury to their property sufficient to afford them standing under 18 U.S.C. § 1964(c).

### a. *§ 1962(c) claim*

Plaintiffs allege that Cynthia Reed violated 18 U.S.C. § 1962(c) which states:

It shall be unlawful for any person employed by or associated with any enter-

prise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

■■■■■ To state a claim under § 1962(c), plaintiffs must allege facts to satisfy four elements: that the defendant (1) participated in the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1273 (10th Cir.1989)(citing *Sedima, S.P.R.L.,* 473 U.S. at 496, 105 S.Ct. 3275). Each element of a RICO claim must be plead with particularity under Fed. R.Civ.P. 9(b). *Brooks I,* 891 F.Supp. at 1476; *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir.1992).

The second amended complaint alleges the racketeering enterprise to be an association-in-fact of William Reed, Cynthia Reed, Teresa Koehn, Reed and Hopkins, P.C. n/k/a W. Reed and Associates, Inc., Script Review, Inc., Diamond Productions, Inc., Legal Forms and Services, Inc., and "various other corporations controlled and operated by William S. Reed and Cynthia L. Reed." Second Amended Complaint, ¶ 165. The alleged purpose of the enterprise is to hinder, delay and defraud William and Cynthia Reed's creditors, including the plaintiffs.[5] ¶ 168.

Defendant Cynthia Reed does not challenge the sufficiency of plaintiffs' allegations as to the RICO enterprise, but instead argues that plaintiffs have failed to properly allege that she participated in the conduct of the alleged enterprise through a pattern of racketeering activity, and that plaintiffs have failed to plead the predicate acts of mail fraud with particularity as required by Fed. R.Civ.P. 9(b).

■■■■■ To impose RICO liability on a defendant under § 1962(c), the plaintiff must show that the defendant had some part in directing the affairs of the enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Resolution Trust Corp. v. Stone,* 998 F.2d 1534, 1541 (10th Cir.1993). Here, the essence of the alleged enterprise is the transfer and concealment of William Reed's assets to avoid paying William Reed's judgment creditors, including the plaintiffs. Plaintiffs must therefore allege sufficient facts to show that Cynthia Reed had some part in directing conduct by the enterprise to conceal William Reed's assets from his creditors, and that she committed predicate acts, which constitute a pattern of racketeering activity, in furtherance of the fraudulent scheme.

■■■■■ RICO defines "racketeering activity" as any act in violation of specified state and federal statutes, including the crime of mail fraud. 18 U.S.C. § 1961(1). An individual must commit a minimum of two predicate acts to be liable under § 1962(c). 18 U.S.C. § 1961(5). Plaintiffs allege that Cynthia Reed has committed two or more predicate acts of mail fraud, in violation of 18 U.S.C. § 1341. The elements of the offense of mail fraud are: "(1) the devising of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises; (2) the specific intent to defraud; and (3) use of the United States Mails for the purpose of executing the scheme." *United States v. Kennedy,* 64 F.3d 1465, 1475 (10th Cir.1995).

The first element of the offense focuses upon the devising of, or intending to devise, a scheme to defraud, rather than the making of false pretenses, representations or promises. *Kennedy,* 64 F.3d at 1475. It is therefore not "necessary to allege [or] prove that the false pretenses, representations or promises were actually made." *Id.* at 1475–76 (quoting *Graham v. United States,* 120 F.2d 543, 544 (10th Cir.1941)). The second element of mail fraud is satisfied by allegations that defendant "[performed] an act with knowledge that the use of the mails will follow in

---

5. With regard to plaintiffs' claim that one of the purposes of the enterprise was to defraud Cynthia Reed's creditors, the court finds that plaintiffs have no standing under 18 U.S.C. § 1964(c) to assert that claim because they are not creditors of Cynthia Reed and have therefore not been injured by any alleged actions of Cynthia Reed. *See Sedima, S.P.R.L.,* 473 U.S. at 495–496, 105 S.Ct. 3275; *Garbade v. Great Divide Mining and Milling Corp.,* 645 F.Supp. 808, 815–816 (D.Colo. 1986), *aff'd on other grounds,* 831 F.2d 212 (10th Cir.1987).

the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended..." *United States v. Sparrow*, 470 F.2d 885, 889 (10th Cir.1972)(quoting *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954)).

■ Plaintiffs must plead the predicate acts of mail fraud with particularity in accordance with Fed.R.Civ.P. 9(b). *Weiszmann v. Kirkland and Ellis*, 732 F.Supp. 1540, 1546 (D.Colo.1990)(internal citations omitted); *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir.1989). To that end, plaintiffs "must specify the time, place, and content of [any] alleged false representation, and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transaction furthered the fraudulent scheme." *Weiszmann*, 732 F.Supp. at 1546.

Here, plaintiffs allege that Cynthia Reed committed two or more acts of mail fraud by participating in a scheme to defraud William Reed's creditors through alleged misrepresentations made by William Reed and the other defendants regarding William Reed's income and ownership of various businesses and other assets.

Plaintiffs allege that William Reed diverted monies from the law firm of Reed & Hopkins, P.C., and later from the law firm of W. Reed and Associates, P.C., to various bank accounts located in various states, including a Script checking account at the Washington Bank and Trust, through the use of the United States mails. ¶¶ 118–124, 129–130, 143, 145. Plaintiffs generally contend that the monies diverted to the various bank accounts were used to pay the personal living expenses of both William and Cynthia Reed. ¶¶ 118, 119, 121, 123, 129, 138, 143–145. Plaintiffs make no allegations regarding any specific withdrawals made by Cynthia Reed.

■ The factual allegations as set forth in the preceding paragraph do not show an act by Cynthia Reed in furtherance of a scheme to defraud the plaintiffs. There are no allegations that Cynthia Reed caused the diversion of funds from the law firm(s) to the bank accounts for the purpose of concealing monies from William Reed's creditors. Rather, plaintiffs allege only that Cynthia Reed "benefitted" from monies which William Reed caused to be deposited into the various bank accounts. General allegations that Cynthia Reed was the beneficiary of monies diverted by William Reed through use of the U.S. mail are insufficient, without more, to state a violation of the mail fraud statute.

■ Second, plaintiffs allege that Cynthia Reed used the United States mails to deposit a check made payable to her personally from D.A. Davidson into the Script checking account on July 16, 1992. Second Amended Complaint, ¶ 133. This allegation, as pleaded, does not show an act by Cynthia Reed in furtherance of a scheme to defraud William Reed's creditors.

■ Third, plaintiffs allege that, on October 17, 1995, Cynthia Reed caused the incorporation of Legal Forms and Services, Inc., which operates under the name Legal Forms +, and provides services as corporate nominee officers and resident agents for Nevada corporations. Second Amended Complaint, ¶¶ 93–94. Plaintiffs allege that William Reed does substantial business through Legal Forms and Services, Inc. ¶ 160. Plaintiffs further allege that Cynthia Reed listed herself as the sole shareholder, sole officer and registered agent of the company on corporate documents for the purpose of concealing William Reed's interest in the company. ¶¶ 160–61. Plaintiffs allege that information as to the ownership and officers of Legal Forms + was placed in the mail at the direction of Cynthia Reed. ¶ 163.

The court finds that plaintiffs' allegations that Cynthia Reed misrepresented her own and William Reed's interest in Legal Forms and Services, Inc. on corporate documents which were placed in the United States mail, for the purpose of concealing William Reed's interest in the company, allege an act in furtherance of a scheme to defraud plaintiffs' creditors so as to state a violation of the mail fraud statute.

Finally, plaintiffs allege that after the Colorado state court judgment against Cynthia Reed was vacated, James Reed quitclaimed

the property at 1713 Glenview Drive to Cynthia Reed In April 1996, that William Reed quitclaimed his community or homestead interest in the property to Cynthia Reed that same month, and that Cynthia Reed thereafter filed a Declaration of Homestead wherein she claimed a homestead exemption for the property. Second Amended Complaint, ¶¶ 98–100. These allegations, as stated, do not allege an act by Cynthia Reed in furtherance of a scheme to defraud William Reed's creditors.

The court finds that plaintiffs have alleged, at most, the commission of a single predicate act of mail fraud by Cynthia Reed, involving alleged fraudulent misrepresentations made by her in the corporate documents for Script Review, Inc. Because plaintiffs have failed to plead the requisite *two* predicate acts of racketeering activity necessary for liability under § 1962(c), the court recommends that plaintiffs' § 1962(c) claim against defendant Cynthia Reed be dismissed.

### b. § 1962(d) claim

Plaintiffs allege, in their second claim for relief, that defendants James Reed, Cynthia Reed and Teresa Koehn participated in a conspiracy with all other named defendants to hinder, delay or defraud William Reed's creditors in violation of 18 U.S.C. § 1962(d) which states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

■ Defendants argue that because plaintiffs have failed to plead a violation of § 1962(c), the conspiracy claim necessarily fails. The object of the alleged RICO conspiracy must be the violation of a substantive RICO provision. *Schroder v. Volcker*, 864 F.2d 97, 98 (10th Cir.1988)(internal citations omitted). Therefore, failure to plead a substantive violation under § 1962(a), (b) or (c) will preclude a conspiracy claim under § 1962(d). *Id.*

Plaintiffs have failed to plead a violation of § 1962(c) by Cynthia Reed. However, plain-

tiffs' complaint also alleges that defendant William Reed violated § 1962(c). The court must therefore determine whether plaintiffs have properly plead that claim against William Reed before reaching the merits of plaintiffs' RICO conspiracy claims.

■ Plaintiffs allege that defendant William Reed conducted the affairs of the alleged associate-in-fact enterprise through a pattern of mail and wire fraud [6] for the purpose of hindering, delaying and defrauding his creditors, including the plaintiffs.

The court first analyzes whether plaintiffs have adequately plead the existence of an association-in-fact enterprise. The second amended complaint alleges the racketeering enterprise to be an association-in-fact of William Reed, Cynthia Reed, Teresa Koehn, Reed and Hopkins, P.C. n/k/a W. Reed and Associates, Inc., Script Review, Inc., Diamond Productions, Inc., Legal Forms and Services, Inc., and "various other corporations controlled and operated by William S. Reed and Cynthia L. Reed." Second Amended Complaint, ¶ 165. The entity associates are all alleged to be operated and controlled by William and Cynthia Reed. Plaintiffs allege that defendant Koehn's operation of the law firm was directed by William Reed. Koehn was also the registered agent for Script Review, Inc.

■ To plead a RICO enterprise, the plaintiffs must allege facts to show "an ongoing organization with a decision-making framework or mechanism for controlling the group," "that the various associates function as a continuing unit", and that the enterprise is separate and apart from the pattern of racketeering activity. *United States v. Sanders*, 928 F.2d 940, 943–44 (10th Cir.1991)(citing *United States v. Riccobene*, 709 F.2d 214, 222–223 (3rd. Cir.1983)); *see, also, United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

Here, plaintiffs have satisfied the first element by alleging sufficient facts to show that the decision-making framework for the orga-

---

**6.** Wire fraud is a RICO predicate act. 18 U.S.C. § 1961(1). The elements of the offense of wire fraud are the devising of a scheme to defraud and the use of the interstate wires with the intent to further the fraudulent scheme. 18 U.S.C. § 1343; *United States v. Smith*, 133 F.3d 737, 742 (10th Cir.1997).

nization remained the same over time, in that William Reed controlled and operated the various entity associates of the enterprise and directed the activities of Teresa Koehn, one of the individual associates of the enterprise. Plaintiffs have satisfied the second element by pleading that for a period of several years a group of businesses controlled by William Reed operated as a front for the perpetration of multiple, ongoing illegal activities and that Teresa Koehn and Cynthia Reed assisted him in conducting the affairs of the entity associates. Plaintiffs have also satisfied the third element by alleging that the various associates of the enterprise engage in legitimate business activities which are separate and apart from the alleged racketeering activities. Second Amended Complaint, ¶ 167. *See Chang v. Chen,* 80 F.3d 1293, 1298 (9th Cir.1996)(finding that separateness requirement was satisfied by allegations that alleged entity members of RICO enterprise were involved in RICO activities and also conducted legitimate business activities).

▆▆▆▆ The court next analyzes whether plaintiffs have sufficiently alleged that William Reed conducted the affairs of the enterprise through a pattern of racketeering activity. To adequately plead a "pattern of racketeering activity", a plaintiff must allege facts to show that a RICO defendant committed two or more predicate acts, that the predicate acts are related and that they amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Resolution Trust Corp.,* 998 F.2d at 1543. The "relationship" requirement is satisfied by allegations the alleged predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.,* 492 U.S. at 240, 109 S.Ct. 2893. To establish continuity, plaintiffs must allege either "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition."

*Id.* at 241, 109 S.Ct. 2893. Closed-period continuity contemplates a series of related predicate acts extending over a substantial period of time. *Id.* at 242, 109 S.Ct. 2893; *Resolution Trust Corp.,* 998 F.2d at 1534.

Plaintiffs' second amended complaint alleges that William Reed conducted the affairs of the association-in-fact enterprise through the commission of predicate acts of mail and wire fraud in several different states which continued for a period of at least three years. Plaintiffs allege that during that period, William Reed, in an effort to conceal his ownership interest in these monies from his creditors, directed Teresa Koehn to divert substantial funds from the law firm to various bank accounts in various states, including an account opened in Script's name which remained active until December 1994. Plaintiffs allege that William Reed transferred monies from Diamond Productions, Inc.'s corporate bank accounts to the Script account and that those monies were used to purchase an interest in real property in Montana under the name Diamond Productions, Inc. Plaintiffs allege that William Reed caused his father to purchase the property at 1713 Glenview Drive with funds taken from the Script account, had the ownership placed in his father's name, and then resided at that location for several years. Plaintiffs further allege that William Reed conducted substantial business through Legal Forms +, a corporation set up in his wife's name so that his ownership interest in the company could be concealed.

▆▆▆ The court finds that plaintiffs have satisfied the "relationship" test because the allegations show that the predicate acts were similar in their method of commission and were directed toward the single goal of concealing William Reed's assets from his judgment creditors. The court further finds, however, that plaintiffs have failed to allege facts to satisfy the "continuity" requirement. Although plaintiffs' factual allegations show a closed-ended series of related predicate acts committed by William Reed over a period of at least three years through the operation of the alleged association-in-fact enterprise,[7] the

---

7. The allegations of plaintiffs' second amended complaint show that the members of the alleged

associate-in-fact enterprise functioned as a continuing unit for a period of approximately three

nature of the scheme and the number of victims disfavor a finding of continuity. In the Tenth Circuit, the continuity requirement is not met where there is a single scheme to accomplish a discrete goal directed at a finite group of individuals "with no potential to extend to other persons or entities." *Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1516 (10th Cir.1990); *Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545, 1555–56 (10th Cir.1992).

Here, William Reed directed the affairs of the association-in-fact enterprise through a pattern of mail and wire fraud for the purpose of accomplishing a single goal: ·to hinder, delay, and defraud his judgment creditors, a finite group of victims which includes the plaintiffs and the Washington state partnerships. Plaintiffs have not shown that the scheme has any potential to extend to other persons or entities. The court finds that plaintiffs' allegations do not allege a pattern of illegal conduct that is proscribed by RICO. The court therefore recommends that plaintiffs' RICO conspiracy claims against all defendants be dismissed as plaintiffs have not properly plead a violation of § 1962(c) against either William or Cynthia Reed.[8]

#### B. *State Law Claims*

This court has subject matter jurisdiction over plaintiffs' common law claims under the supplemental jurisdiction statute, 28 U.S.C. § 1367. Plaintiffs' RICO claims and plaintiffs' common law claims of fraudulent conveyance and civil conspiracy arise out of a common nucleus of operative facts and therefore "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see, also,*

*James v. Sun Glass Hut of California, Inc.,* 799 F.Supp. 1083, 1084 (D.Colo.1992).

Because the recommendation is for dismissal of the claims over which this court has original jurisdiction, the court further recommends that the court decline to exercise its supplemental jurisdiction over plaintiffs' common law claims. 28 U.S.C. § 1367(c)(3); *see, also, Gullickson v. Southwest Airlines Pilots' Association,* 87 F.3d 1176, 1187 (10th Cir. 1996); *Friedlob v. Trustees of the Alpine Mutual Fund Trust,* 905 F.Supp. 843, 860 (D.Colo.1995).

### IV. Recommendation

For the reasons set forth above, the court recommends that James Reed's Motion to Dismiss Second Amended Complaint [filed April 13, 1998] be **GRANTED.**

The court recommends that Cynthia Reed's Motion to Dismiss Second Amended Complaint [filed April 15, 1998] be **GRANTED.**

The court recommends that Teresa Roberts' Motion to Dismiss Second Amended Complaint [filed May 26, 1998] be **GRANTED.**

The court further recommends that plaintiffs' common law claims of fraudulent conveyance and civil conspiracy be dismissed without prejudice.

The court recommends that plaintiffs' Second Amended Complaint be dismissed in its entirety.

Within ten days after being served with a copy of the proposed findings and recommendation as provided by Rules of court. The district court judge shall make a de novo determination of those portions of the pro-

---

to five years; however, the enterprise pleaded by the plaintiffs has ceased to exist. The law firm has been dissolved, Script Review, Inc. has been suspended and the Script bank account closed. There are no allegations regarding the corporate status of Diamond Productions and no allegations that Teresa Koehn continued to work for William Reed once the law firm and Script discontinued operations. The only remaining entity associate alleged to be operating at present is Legal Forms +.

To the extent plaintiffs would have the court find that Legal Forms + has become the RICO enterprise and that William Reed's operation of

that company poses a threat of continuing illegal activity, plaintiffs have not alleged particular facts to show that William Reed is conducting the affairs of Legal Forms + through the commission of related predicate acts that have injured the plaintiffs.

8. The court's finding that plaintiffs have failed to allege facts to satisfy the "pattern" requirement would be an alternative ground for dismissal of the § 1962(c) claim against Cynthia Reed, assuming that plaintiffs had otherwise adequately pleaded that she committed the requisite number of predicate acts.

posed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.

July 23, 1998.